IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

ANTON WILLIAMS,

Defendant

Criminal No.: ELH-19-0286

**MEMORANDUM**

Defendant Anton Williams was one of 25 defendants charged in a drug trafficking case. Pursuant to a Plea Agreement (ECF 1137), defendant entered a plea of guilty on June 1, 2021, to the offenses of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §846 (Count One); possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Twenty-Seven); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count Thirty). ECF 1135. Under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a total sentence of 120 months of incarceration. ECF 137, ¶ 9. At sentencing on September 10, 2021 (ECF 1274), the Court imposed the agreed upon sentence, with credit for time served since May 22, 2019. ECF 1275 (Judgment). That sentence corresponded to the mandatory minimum term of imprisonment for Count One.

Of relevance here, the Plea Agreement provided for forfeiture. ECF 1137, ¶¶ 14-19. In particular, defendant agreed to the entry of a money judgment equal to at least $472,000 and to the forfeiture of a .38 caliber revolver and eight rounds of ammunition. *Id.* ¶¶ 14, 15.

The Court issued a Preliminary Order of Forfeiture on September 9, 2021. ECF 1267. A money judgment of $472,000 was entered against defendant. *Id.* at 2. That amount is not contested. Rather, the dispute involves whether the government has properly credited defendant

with the amounts recovered from certain monetary seizures as well as the collection of and disposition of other assets.

## I.   Background

As noted, in September 2021, a judgment was entered against defendant in the sum of $472,000, pursuant to the terms of his Plea Agreement (ECF 1137) and a Preliminary Order of Forfeiture (ECF 1267).

On January 27, 2023, the government moved to amend ECF 1267. *See* ECF 1394 ("Motion"). It sought "to include the following subsequently located property, pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure: (a) real property located at 2850 Woodbrook Avenue, Baltimore, MD 21217; and (b) $4,483.15 located in Defendant Anton Williams' inmate account at the Federal Bureau of Prisons." *Id.* at 1. In support of its Motion, the government attached the Declaration of Deputy United States Marshal David Ashton. ECF 1394-1. He recounted his attempts to locate the proceeds of Williams's criminal conduct. *Id.*

Deputy Ashton has been employed by the United States Marshals Service ("USMS") since 2002. *Id.* ¶ 1. He stated, based on his training and experience, that "due to the acts or omissions of the Defendant, drug proceeds cannot be located with due diligence because they were transferred or sold to, or deposited with, a third party, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty." *Id.* ¶ 6.

Further, Deputy Ashton averred that, "[a]fter offsetting the combined value" of property of defendant that was administratively forfeited, defendant "still owes approximately $115,411.97 towards his money judgment." *Id.* ¶ 5. He also included a list of Williams's property that was subject to administrative forfeiture, *id.* at 2-3 n. 1:

2

(1) approximately $4,582 seized from a Wells Fargo bank account in the name of Anton Miquel Williams d/b/a Three K Partnership (19-DEA-653317);
(2) approximately $2,813 seized from a Wells Fargo bank account in the name of Anton Miquel Williams d/b/a Three K Partnership (19-DEA-653316);
(3) approximately $869 seized from a Wells Fargo bank account in the name of Anton Miquel Williams (19-DEA-653314);
(4) approximately $8963 seized from a Wells Fargo bank account in the name of Anton Miquel Williams (19-DEA-653307);
(5) approximately $1,775 seized from a bank account in the name of Anton Miquel Williams and A Juvenile (19-DEA-653267);
(6) approximately $460 seized from a MECU account in the name of Anton Miquel Williams (19- DEA-653245);
(7) 2014 Toyota Venza valued at $8,900 at seizure (19-DEA-652893);
(8) Rolex Datejust Watch valued at $8,900 at seizure (19-DEA-652773);
(9) $206,374 U.S. Currency seized in Baltimore, Maryland from Anton Miquel Williams and Lanair Shaniece Green (19-DEA- 652189);
(10) approximately $118,398 seized from a MECU bank account in the name of Anton Miquel Williams (19-DEA-653172).

I granted the government's Motion and, on January 27, 2023, I issued an "Order Amending The Preliminary Order of Forfeiture To Include Subsequently Located Property." *See* ECF 1395. But, on February 5, 2023, the government moved to vacate the Order (ECF 1395). *See* ECF 1399. The government sought additional time for Williams, as an incarcerated individual, to respond to the Motion. *Id.* I granted that motion (ECF 1400), which vacated ECF 1395.

Thereafter, Williams filed an opposition to ECF 1394. *see* ECF 1401. He advances several contentions. In sum, defendant asserts that he has "suffered seizure of $722,407," and he "is owed $250,407 by the government." *Id.* at 3. He also seeks entry of an order of satisfaction as to the judgment. *Id.*

According to Williams, Deputy Ashton's Declaration reflects a total of administrative forfeitures in the sum of $362,034. This would leave a balance due and owing by defendant of $109,966, and not the sum of $115,411.97, as claimed by the government. ECF 1401 at 2.

3

In addition, defendant complains that items with "real value" were forfeited but not included on the list of items. *Id.* These include ten cellphones, a money counter, and the firearm. *Id.*

Further, Williams asserts that, according to the Plea Agreement, investigators seized $206,444 in cash, not $206,374, in cash. ECF 1401 at 2. And, he claims that the government recovered a total of $363,233 from various bank accounts. *Id..* Therefore, he maintains he has paid $97,677 more than he owes. *Id.*

Defendant also contends that Deputy Ashton failed to include the value of two vehicles seized from defendant: a 2018 Lexus LC 500 Coupe, valued at $92,000, and a 2017 Infiniti QX-80, valued at $43,000. ECF 1401. at 3. He states, *id.*: "This amounts to $135,000 in unreported seizures . . . ." *Id.*

The government replied (ECF 1407), supported by several exhibits. ECF 1407-1 to ECF 1407-4.[1] Among other things, the government explains that expenses are incurred in disposing of non-cash assets, such as appraisal fees and storage costs. ECF 1407 at 4. These expenses are deducted from any amount that is recovered and the balance is then credited to the money judgment. Moreover, the government notes that defendant is entitled to credit based on the actual sales price of an asset, and not the estimated value. *Id.* Indeed, in the Plea Agreement defendant agreed to a credit for net proceeds. *Id.* (citing ECF 1137, ¶ 14).

As to the firearm, the ten cellphones, and the money counter, the government explains that these items were used to commit the crimes and therefore defendant cannot be credited with their

---

[1] Notably, ECF 1407-1 to ECF 1401-3 are "Department of Justice Consolidated Asset Tracking System" status inquiries. *See* ECF 1407 at 4. And, ECF 1407-4 contains redacted "U.S. Marshal Seized Property Forms." *See* ECF 1407 at 7; *id.* n. 2.

4

value. ECF 1407 at 6. Moreover, the government reiterates that it is entitled to the sum of about $4,483.15 from defendant's BOP inmate account. *Id.* at 7.

Notably, the government concedes that defendant is entitled to credit for the disposition of the 2018 Lexus and the 2017 Infiniti. *Id.* at 6. According to the government, the two vehicles were valued at $95,500 at the time of seizure, and it has credited defendant with that sum. *Id.* at 6-7. Thus, the government claims that defendant owes $19,911.97. *Id.* at 7.

In view of the amount remaining on the judgment, the government states that it has decided not to pursue the request for forfeiture of the Woodbrook Avenue property. ECF 1407 at 7, 9.

Williams filed a supplement in support of his initial response. ECF 1411. He asserts that the property on Woodbrook Avenue is not subject to forfeiture. *Id.* at 2. He also maintains that the government is not entitled to the monies in his prison commissary account. *Id.*

In addition, as to defendant's Rolex watch, defendant acknowledges the sales price of $4,020 and the expenses of $60.64 and $341.70. ECF 1411 at 2. But, even so, he complains that he was only credited with the sum of $2,575. *Id.* In his view, he is entitled to credit for an additional $1,042.66. *Id.* at 2-3.

No hearing is necessary to resolve the Motion. Local Rule 105.6.

## II. Discussion

### A.

Criminal forfeiture is part of a defendant's sentence. *Libretti v. United States*, 516 U.S. 29, 38-39 (1995); *United States v. Martin*, 662 F.3d 301, 306 (2011). The procedure used to effectuate criminal forfeiture is set forth in Fed. R. Crim. P. 32.2. *Martin*, 662 F.3d at 306-07.

In 28 U.S.C. § 2461, it states, in part: "If the defendant is convicted of the offense giving rise to the forfeiture, the court *shall* order the forfeiture of the property as part of the sentence in

the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code." (Emphasis added.)

Section 3554 of 18 U.S.C. states, in part: "The court, in imposing a sentence on a defendant who has been found guilty of an offense described in section 1962 of this title or in title II or III [of the drug laws] *shall order*, in addition to the sentence that is imposed . . . that the defendant forfeit property to the United States . . . ." (Emphasis added.) *See United States v. Newman*, 659 F.3d 1235, 1239 (9th Cir. 2011).

The statutory provisions require forfeiture of all property obtained, directly or indirectly, from the commission of the crime or crimes. In 18 U.S.C. § 981(a)(2)(A), "proceeds" are defined as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property thereto. . . ." Section 982(a)(2) requires forfeiture of "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of [the crime]").

F. R. Crim. P. 32.2(a) requires notice to a defendant of the government's intention to seek forfeiture of property as part of any sentence. It does not require the indictment to specify the amount of any forfeiture money judgment that the government seeks or to identify the property subject to forfeiture. The government must establish, by a preponderance of the evidence, a nexus between the property for which it is seeking forfeiture and the crime. Rule 32.2(b)(1)(A). If the government satisfies its burden, the district court must enter a preliminary order of forfeiture. Rule 32.2(b)(2); *Martin*, 662 F.3d at 307.

The statutory provisions cited earlier indicate that the Court "shall order" forfeiture, as indicated. In other words, if the government meets the requirement, the district court must impose criminal forfeiture, "subject only to statutory and constitutional limits." As the Supreme Court

6

said in a related context, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied." *United States v. Monsanto*, 491 U.S. 600, 607 (1989).  In other words, the word "shall" does not convey discretion.  *United States v. Blackman*, 746 F.3d at 143 (citing *United States v. Fleet*, 498 F.3d 1225, 1229 (11th Cir. 2007)); *see also Newman*, 659 F.3d at 1240; *United States v. Torres*, 703 F.3d 194, 204 (2nd Cir. 2012).

Indeed, "Congress conceived of forfeiture as punishment for the commission of various [crimes]." *Libretti*, 516 U.S. at 39; *see also Blackman*, 746 F.3d at 143; *United States v. McGinty*, 610 F.3d 1242, 1247-48 (10th Cir. 2010); *United States v. Leahy*, 464 F.3d 773, 793 n.8 (7th Cir. 2006); *United States v. Taylor*, 582 F.3d 558, 565-66 (5th Cir. 2009) (per curiam), *cert. denied*, 558 U.S. 1136 (2010).  It is "calculated on the basis of the total proceeds of a crime, not the percentage of those proceeds remaining in the defendant's possession at the time of the sentencing hearing." *Blackman*, 746 F.3d at 144; *see United States v. Hampton*, 732 F.3d 687, 692 (4th Cir. 2013); *United States v. Amend*, 791 F.2d 1120, 1127 n.6 (4th Cir. 1986).  A defendant's indigency does not defeat a forfeiture order.  *Blackman*, 746 F.3d at 144.

But, the district judge has an independent duty to "determine the amount of money that the defendant will be ordered to pay." F. R. Crim. P. 32.2(b)(1)(A).  "The court's determination may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." F. R. Crim. P. 32.2(b)(1)(B).

**B.**

Defendant objects to the forfeiture of his interest in real property located at 2850 Woodbrook Avenue in Baltimore, with a value of $68,233.12. *See* ECF 1401 at 2; ECF 1411 at 2. But, as noted, the "government is choosing not to proceed with its request that the Amended

Preliminary Order of Forfeiture include the Defendant's real property." ECF 1407 at 7. Accordingly, defendant's objection to the forfeiture of his real property is moot. *Id.* at n. 4.

Defendant also points to a footnote in Deputy Ashton's Declaration, ECF 1394-1 at 2-3 n. 1. According to Williams, based on the value of administratively forfeited items, he has a remaining balance on the judgment of approximately $109,966, rather than $115,411.97, as indicated by the government. *See* ECF 1401 at 2.

In addition, defendant disputes the government's claim to the $4,483.15 in his Bureau of Prisons inmate account. ECF 1401 at 1; ECF 1411 at 2. He argues that because the funds in the account were deposited by friends and family after his incarceration, it should not be subject to criminal forfeiture. But, "[c]ourts have held consistently that inmate trust accounts are subject to forfeiture as substitute assets." *United States v. White*, RMB-17-431, 2021 WL 3038670, at *5 (S.D.N.Y. July 19, 2021). Indeed, "[t]here is no limitation on the forfeiture of the inmate account funds and Defendant is not entitled to have funds in his prison account that are exempt from forfeiture while he owes the money judgment." *United States v. Kimball*, JBB-2-53, 2015 WL 13376921, at *2 (M.D. Tenn July 16, 2015), *report and recommendation adopted and approved*, 2015 WL 13376753, *aff'd*, 680 F. App'x 435 (6th Cir. 2017). If Williams owes money on his forfeiture judgment, then the government is entitled to claim the assets in his prison inmate account.

Williams also raises an issue as to the credit he has received for currency recovered by the government. The exhibits reflect that the government recovered $137,860.66 from the defendant's financial accounts. *See*, *e.g.*, ECF 1394-1 at 2-3 n.1; ECF 1407-1 at 2. In addition, the records reflect that the government seized $206,374 in U.S. currency from defendant's residence on May

8

22, 2019. *Id.* But, this latter sum varies slightly from the Plea Agreement (ECF 1137 at 12), which states that the government seized $206, 444 in U.S. currency. ECF 1137 at 12.

Defendant suggests that he may "the victim of $97,677 in cash seizures over the judgment amount." ECF 1401 at 2. He appears to rely on the Plea Agreement, which references the seizure of $206,444 as well as the recovery of "a total of $363,233 from various bank accounts associated with [the defendant]." ECF 1137 at 12. In other words, defendant implies that the sum of $363,233 was in addition to the cash recovery of $206, 444, meaning that the government seized a total of $569,677, *i.e.,* $97,677 more than the forfeiture judgment of $472,00. ECF 1401 at 2. But, the government maintains that the phrase "from various bank accounts" was a "typo" and that the text should have stated "*cash* and bank accounts." ECF 1407 at 5 (emphasis in original). In other words, the government contends that the sum of $363,233 is inclusive of the cash recovery of $206,444.

As the government points out, upon review of the Plea Agreement in its entirety, ECF 1137 at 11-12, is clear that the sum of $363,233 represented the total recovery, *i.e.*, both cash and the money obtained from financial accounts. ECF 1407 at 5. As the government puts it, "if $363,233 was seized from bank accounts and added to the $206,374 in cash seizures, that total would have *already exceeded* the amount of the money judgment." *Id.* (italics in original).

In the Plea Agreement, Williams stipulated that the government seized $206,374 from his residence. ECF 1137 at 11. And, defendant has been credited with $206,374. *See* ECF 1407-1 at 2. The government also seized a total of $137,860.66 from seven financial accounts, according to the exhibits. ECF 1407-1 at 2 contains a section titled "Assets Linked to Satisfy the Judgment." It provides the following:

9

**Assets Linked to Satisfy the Judgment**

| Asset ID | Asset Description | Asset Value | Status | Forf Type |
|---|---|---|---|---|
| 19-DEA-652189 | $206,374.00 U.S. Currency | $206,374.00 | Forfeited | Admin |
| 19-DEA-652773 | Rolex Datejust Watch | $2,575.00 | Forfeited | Admin |
| 19-DEA-652893 | 2014 Toyota Venza | $11,625.00 | Forfeited | Admin |
| 19-DEA-653172 | MECU, Account #6123563439, VL: $118,397.68 | $118,397.68 | Forfeited | Admin |
| 19-DEA-653245 | MECU, Account #2119098826, VL: $460.37 | $460.37 | Forfeited | Admin |
| 19-DEA-653267 | MECU, Account #6123599099, VL: $1,775.29 | $1,775.29 | Forfeited | Admin |
| 19-DEA-653307 | Wells Fargo, Savings Account #1721875159, VL: $8,9 | $8,963.05 | Forfeited | Admin |
| 19-DEA-653314 | Wells Fargo, Checking Account #3758365286, VL: $86 | $869.01 | Forfeited | Admin |
| 19-DEA-653316 | Wells Fargo, Choice Checking Account #5279003569, | $2,813.02 | Forfeited | Admin |
| 19-DEA-653317 | Wells Fargo, Business Market Rate Savings Account | $4,582.24 | Forfeited | Admin |

I agree with the government's construction of the Plea Agreement and related exhibits. Defendant has been credited with the seizure of $206,374 in cash, found at his residence. He is not entitled to a second credit in that sum.

However, the sum of $206,374 in cash seized on May 22, 2019, and the sum of $137,860.66 seized from seven financial accounts (ECF 1407 at 5-6) totals $344,234.66. Thus, there is a discrepancy of $18,998.34 between the total sum in the Plea Agreement that the government and defendant had agreed was seized ($363,233, as per ECF 1137 at 12) and the amount that was seized according to the exhibits ($344,234.66, as per ECF 1407-1). But, the government has not provided any explanation for the discrepancy.

Moreover, defendant challenges the government's award of credit based on its net recovery of certain seized items, rather than the initial valuations of the items. ECF 1401 at 2. However, defendant is only entitled to credit for the net proceeds of sale as to the seized property, not the estimated value at the time of seizure.

The 2014 Toyota Venza and the Rolex Datejust watch were initially valued at $8,900, for a total of $17,800. *See* ECF 1394-1 at 2-3. But, the items did not sell for those prices. And, expenses of sale are deductible. As a result, defendant was credited with $11,625 from net proceeds of the

10

sale of the 2014 Toyota Venza, as well as $2,575 for the sale of the Rolex watch, for a total of $14,200. *See* ECF 1407-3 at 3.

In other words, the government recovered less money for these items than expected, and also incurred expenses in regard to the sale. As a result, Williams was credited with $3,600 less than originally anticipated.

However, with respect to the Rolex watch, Williams takes issue with the government's calculations. ECF 1411 at 2-3. The Rolex watch sold for $4,020. ECF 1407-2 at 3. The government deducted "sales-related expenses of $60.64 and $341.70" from the amount recovered. *See* ECF 1407-2.; ECF 1407 at 4.[2] Yet, the government has only credited defendant with $2,575 in proceeds of sale. ECF 1407-3 at 4. It is unclear why defendant has not been credited with the full net proceeds of sale, *i.e.*, $4,020 less $60.64 and $341.70. That equates to $3,617.66, not $2,575, and yields an unexplained discrepancy of $1,042.66.

The government also lists the net total asset value of the forfeited property at $358,434.66 and the total net equity at $356,588.03. *See* ECF 1407-1 at 2. But, the government has not explained why defendant should only be credited with the government's net equity, rather than the total net asset value, which is a difference of $1,846.63.

Further, defendant seeks credit for the value of the firearm, ten cellphones, and money counter that were seized from his residence. ECF 1401 at 2-3. The government contends that these items were properly excluded from the calculation, as they were "used to facilitate the commission of a drug trafficking offense under 21 U.S.C. § 853(a)(2)." ECF 1407 at 6. According to the

---

[2] The government acknowledged that defendant is not liable for an expense of $881.80. ECF 1407 at 4 n. 1; ECF 1407-3 at 4.

government, the "forfeiture money judgement [sic] relates to property derived from the Defendant's drug trafficking offenses (i.e. 'proceeds') under 21 U.S.C. § 853(a)(1)." *Id.*

The government is correct that the Preliminary Order of Forfeiture (ECF 1267 at 2), as well as the Plea Agreement (ECF 1137, ¶ 14), clearly contemplate that the forfeiture order pertains to property "derived from" the offense, rather than property used in the commission of the offense. *See* ECF 1407 at 6. Therefore, the government properly declined to credit defendant with the value of the firearm, ten cellphones, and money counter from defendant's forfeiture money judgment.

Defendant's last objection involves the government's initial oversight of two of defendant's seized vehicles, *i.e.,* the 2018 Lexus LC 500 Coupe and the 2017 Infiniti QX-80. ECF 1401 at 3. The government explains the oversight, stating that soon "after seizing the vehicles, the DEA placed them into official use, and did not subsequently notify the U.S. Attorney's Office as to the disposition of this seized property so that it could be properly credited against the Defendant's outstanding forfeiture money judgement." *Id.* at 6. The government has since rectified its omission, and has credited defendant with the value of the vehicles, supposedly as of the time of seizure. ECF 1407 at 6-7. However, defendant asserts that the government has improperly valued the two vehicles.

One of the vehicles, the 2018 Lexus, was appraised four days after its seizure, and was valued at $63,975. *See* ECF 1407-4 at 2. Defendant asserts that it was valued at $94,000.00 in "DEA seizure documents." ECF 1411 at 3. But, he has not proffered these documents to the court.

Defendant also raises a contention with respect to the second vehicle, the 2017 Infiniti. It was seized on June 18, 2019, and was appraised for $31,525. ECF 1407-4 at 1. But, the government's exhibit reflects that the valuation was made on September 3, 2020. *Id.* And, as the government notes, the vehicle was put into official use shortly after seizure. ECF 1407 at 6.

12

The government asserts that it has credited defendant with the value of the vehicles *at the time of their seizure*. ECF 1407 at 6-7. But, the facts as to the Infiniti reflect otherwise. The valuation for that vehicle occurred more than a year after the seizure. In that time, DEA used the vehicle. Use of a vehicle for more than a year undoubtedly results in depreciation and would impact the value.

### III.   Conclusion

The forfeiture judgment is $472,000. The government claims that it has seized cash and assets totaling $356,588.03 in value. *See* ECF 1407 at 3. The government has since credited Williams with an additional $63,975 for the 2018 Lexus and $31,525 for the 2017 Infiniti. And, the government no longer seeks to forfeit the defendant's Walbrook Avenue property.

It appears that defendant is entitled to an additional $1,042.66 in credit for the Rolex watch. And, defendant may be entitled to credit for an additional $18,998.34, representing money seized from defendant's bank accounts and cash recovered from defendant's residence. As noted, the Plea Agreement stated that the government seized $363,233 from these sources. Yet, defendant was only credited with $344,234.66.

Further, defendant is entitled to recover the value of the Infiniti at the time of seizure, not the value after the vehicle was used by the DEA for more than a year. Based on the government's submission, the value of $31,525 did not account for depreciation between the time of seizure and appraisal. But, if Williams still owes a balance on the judgment, then the government is entitled to forfeiture of $4,483.15 from defendant's inmate commissary account.

In view of the issues set forth above, I shall direct the government to submit a memorandum clarifying the various matters raised herein, due within 30 days of the date of docketing of the

attached Order. If defendant wishes to respond, he must do so within 21 days of the date of the government's submission. A reply, if any, shall be due within 14 days thereafter.

An Order follows, consistent with this Memorandum.

Date:   July 25, 2023                                         /s/
                                                       Ellen Lipton Hollander
                                                       United States District Judge